UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-23279-RNS

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                     **FILED *EX PARTE***

ALL RIGHT TO AND INTEREST IN PNC
CORPORATE PLAZA HOLDINGS LLC HELD,
CONTROLLED, OR ACQUIRED, DIRECTLY
OR INDIRECTLY, BY OPTIMA CBD
INVESTMENTS LLC AND/OR CBD 500 LLC,
INCLUDING ANY INTEREST HELD IN OR
SECURED BY THE REAL PROPERTY AND
APPURTENANCES LOCATED AT 500 WEST
JEFFERSON STREET, LOUISVILLE, KY 40202;
ANY RIGHT TO COLLECT AND RECEIVE ANY
PROFIT, RENT, INCOME, AND PROCEEDS
THEREFROM; AND ANY INTEREST DERIVED
FROM THE PROCEEDS INVESTED IN PNC
CORPORATE PLAZA HOLDINGS LLC BY OPTIMA
CBD INVESTMENTS LLC AND/OR CBD 500 LLC,

        Defendant.
_____/

*EX PARTE* APPLICATION FOR POST-COMPLAINT
RESTRAINING ORDER PURSUANT TO 18 U.S.C. § 983(j)(1)(A)
AND MEMORANDUM OF LAW IN SUPPORT THEREOF

The United States of America, by its undersigned attorneys, ("United States" or the "Government") hereby applies to this Court *ex parte*, pursuant to 18 U.S.C. § 983(j)(1)(A), for a restraining order to preserve the availability of all right to and interest in PNC Corporate Plaza Holdings LLC ("PNC Holdings") held, controlled, or acquired, directly or indirectly, by Optima CBD Investments LLC ("Optima CBD") and CBD 500 LLC ("CBD 500"), which includes any interest held in or secured by PNC Holdings' assets, such as real property and appurtenances

located at 500 West Jefferson Street, Louisville, KY 40202 ("PNC Plaza"), any profit, rent, income, and proceeds therefrom, and any interest derived from the proceeds invested in PNC Holdings by Optima CBD and CBD 500 (the "Defendant Asset"), until further Order of the Court.

**I.       Introduction**

On August 6, 2020, the United States filed a Verified Complaint for Forfeiture *In Rem* in accordance with Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Rule G"), Dkt. No. 1 ("the Complaint"), alleging that the Defendant Asset is forfeitable to the United States.  The Complaint alleges facts sufficient to support a finding of probable cause that the Defendant Asset is traceable to violations of U.S. law and specified unlawful activity, including violations of 18 U.S.C. §§ 1956, 1957, 2314, and 2315, and that it was involved in one or more money laundering offenses in violation of 18 U.S.C. §§ 1956 and 1957. The specified unlawful activity serving as the basis for those claims includes fraud by or against a foreign bank (18 U.S.C. § 1956(c)(7)(B)(iii)); the transportation, receipt, concealment, possession, sale, and disposal of misappropriated money in international commerce (18 U.S.C. §§ 2314 and 2315); and conspiracy to commit those offenses.

In the Complaint, the Government alleges that the acquisition of 95% of the rights in PNC Holdings, which indirectly owns PNC Plaza through 500 West Jefferson Street LLC ("500 West Jefferson"), was financed with money obtained by fraud and embezzled from PrivatBank ("the bank").

The majority owners of the bank, Ihor Kolomoisky and Gennadiy Boholiubov, caused hundreds of millions of dollars of loans to be issued to entities they owned through fraudulent misrepresentations.  They then laundered the proceeds of that misappropriation through a network of companies, transferring the funds into US accounts in the names of shell companies created by

their US associates, Mordechai Korf, and Uriel Laber.  PNC Holdings is a joint venture entity created by Korf and Laber and a third-party investment firm, of which Korf and Laber own 95%. The remaining five percent is owned by MTP – PNC Plaza, LLC ("MTP"), which is not implicated by the allegations in the Complaint.

In a Purchase and Sale Agreement dated July 17, 2020, Korf and Laber agreed to sell the Defendant Asset for $25 million, and on July 23, 2020, the sale price was reduced to $22.25 million through a signed amendment (as amended, the Sale Agreement").

The Government seeks a restraining order to preserve the Defendant Asset without disturbing the 5% interest held by MTP, while enabling PNC Plaza to be sold pursuant to the terms of the Sale Agreement.

## II. The Basis for Forfeiture

The Complaint sets out in detail the basis for finding probable cause that the Defendant Asset is subject to forfeiture; this section is a brief summary of those allegations.

Kolomoisky and Boholiubov owned and controlled PrivatBank in Ukraine.  Dkt. 1 at ¶¶ 25-35.  They used their position to cause the bank to issue hundreds of millions of dollars in loans to entities they owned, under false pretenses, beginning in 2008 and continuing until 2016, when the bank was nationalized after it lost billions as part of their scheme.  *See, e.g.*, Dkt. 1 at ¶¶ 37-43.  Their actions constituted embezzlement and fraud; the loan applications contained numerous material misstatements.  *See, e.g.*, Dkt. 1 at ¶¶ 45-53.  After their disbursement, the loan funds were transferred through dozens of entities that had accounts at PrivatBank's Cyprus branch.  Dkt. 1 at ¶¶ 77-81.  The transfers were designed to disguise the source, nature, ownership, and control of the misappropriated funds.  Dkt. 1 at ¶ 84.

Some of the money was transferred to the United States, where it was invested by Kolomoisky and Boholiubov's associates, Korf and Laber, using a network of companies they had created for the purpose, generally using a variation of the name Optima. Dkt. 1 at ¶¶ 87-89.

In this action, the Government alleges that the Defendant Asset is involved in and represents the proceeds of that scheme. In particular, in 2010 and 2011, Kolomoisky and Boholiubov caused two loans to be issued by PrivatBank. Both loan applications were replete with misrepresentations. *See, e.g.*, Dkt. 1 at ¶¶ 107-108, 116-117.

Money from those loans was sent through accounts at PrivatBank's Cyprus branch held by entities ultimately owned by Boholiubov and Kolomoisky. Dkt. 1 at ¶¶ 125-30. They then were transferred to the United States, to an account in the name of Optima Ventures LLC ("Optima Ventures"). Dkt. 1 at ¶¶ 131.

Korf and Laber created the entity Optima 500 in the United States, and used the misappropriated loan funds to purchase PNC Plaza. They also took out a mortgage for the purchase. Dkt. 1 at ¶¶ 102-06.

In 2018, having defaulted on the mortgage, Korf and Laber entered an agreement with third party investor Firm A to restructure the property's ownership using a joint venture. Dkt. 1 at ¶¶ 136-39. Korf and Laber used a new parent entity, Optima CBD, and a wholly owned subsidiary, CBD 500, for the purpose. Dkt. 1 at ¶ 140-41.

Firm A created two entities, MTP – PNC Plaza Manager LLC ("MTP Manager"), which served as a non-member manager, and MTP, which would own a portion of the joint venture. Dkt. 1 at ¶ 143.

Together, CBD 500 and MTP created PNC Corporate Plaza Holdings. CBD 500 had a 95% stake in the joint venture, and MTP had a 5% stake. Dkt. 1 at ¶ 144. PNC Corporate Plaza

4

Holdings created 500 West Jefferson, which was used to purchase the note for the defaulted mortgage. CBD 500 contributed approximately $9.5 million for the purchase, which came from several other members of Korf and Laber's collection of "Optima" companies. Dkt. 1 at ¶ 150.

Korf and Laber were thus able to retain ownership of the property they had purchased with misappropriated funds—they transferred the deed from Optima 500 to the new entity, 500 West Jefferson, of which they indirectly owned 95%. Dkt. 1 at ¶ 149.

Those allegations, detailed in the Complaint, set forth probable cause to believe the interest owned by Optima CBD and CBD 500 in Defendant Asset, PNC Corporate Plaza Holdings, is subject to forfeiture.

### III. Restraint of the Property is Proper and Necessary

Section 983(j)(1)(A) of Title 18, United States Code authorizes the United States to seek, and the Court to issue, a restraining order or protective order over the Defendant Asset. The statute provides:

> Upon application of the United States, the court may enter a restraining order or injunction, require the execution of satisfactory performance bonds, create receiverships, appoint conservators, custodians, appraisers, accountants, or trustees, or take any other action to seize, secure, maintain, or preserve the availability of property subject to civil forfeiture [. . .] upon the filing of a civil forfeiture complaint alleging that the property with respect to which the order is sought is subject to civil forfeiture[.]

18 U.S.C. § 983(j)(1)(A).

The Court also has wide latitude to enter an order appropriate to the facts and circumstances of the case, pursuant to Rule G(7)(a), which provides that, when defendant property is not in the government's possession, the court "may enter any order necessary to preserve the property, to prevent its removal or encumbrance, or to prevent its use in a criminal offense." Likewise, the Court is authorized pursuant to Rule G(7)(b) to approve the sale of a defendant asset to, among

other things, preserve or maximize its value and place the proceeds of such sale in an account maintained by the United States pending the conclusion of the forfeiture action. Supp. R. G(7)(b)(iv).

Such a restraining order may be issued *ex parte*. *See United States v. Bissell*, 866 F.2d 1343, 1349 (11th Cir. 1989) (a restraining order pursuant to 21 U.S.C. 853(e) can be issued *ex parte* once an indictment has issued).[1] Section 983(j)(1)(A) includes no requirement of pre-restraint notice or hearing.[2]

Here, a restraining order should issue because the allegations in the Complaint make out sufficient cause to believe that the Defendant Asset is forfeitable to the United States, and no further hearing or showing is necessary. Failure to restrain, preserve, and properly account for the Defendant Asset (particularly rents and incomes owing) will likely result in its irrevocable loss and will render it unavailable for forfeiture. Without a restraining order, Optima CBD, CBD 500, or other related persons or entities could sell or otherwise transfer the Defendant Asset. Given the incredibly complex network of transactions undertaken to acquire the Defendant Asset, it is highly

---

[1] Though *Bissell* dealt with restraining orders pursuant to 21 U.S.C. § 853(f), because of the similarity in the statutes, the case law applicable to criminal forfeiture restraining orders is equally applicable to restraining orders issued under Section 983(j). *See United States v. Melrose East Subdivision*, 357 F.3d 493, 499 (5th Cir. 2004) (applying section 853(e) case law to section 983(j) restraining order).

[2] That is distinct from the statutory provision governing a request for a *pre-complaint* restraining order, 18 U.S.C. § 983(j)(1)(B), which provides for "notice to persons appearing to have an interest in the property and opportunity for a hearing" before a restraining order can issue. Section (j)(1)(A), which governs applications made post-complaint, contains no such language. *See United States v. Melrose E. Subdivision*, 357 F.3d 493, 499 (5th Cir. 2004) (noting relevance of absence of any mention of a pre-restraint hearing before issuance of post-complaint restraining order under 18 U.S.C. § 983(j)(1)(A)). In this way, Sections (j)(1)(A) and (j)(1)(B) mirror the provisions governing restraining orders in criminal cases, which require notice and a hearing when the Government seeks a restraining order before, but not after, obtaining an indictment. *See* 21 U.S.C. §§ 853(e)(1)(A) (post-indictment) and 853(e)(1)(B) (pre-indictment).

likely that individuals with that expertise would try to further secrete and launder the asset to avoid forfeiture. Such actions could make it impossible to seize—and ultimately forfeit—the proceeds of embezzlement and fraud and property involved in the money laundering conspiracy used to facilitate and launder the proceeds of that criminal scheme.

The Government therefore seeks a restraining order that will permit PNC Corporate Plaza Holdings and MTP Manager to continue to operate in the normal course of business, including executing valid contracts for the sale of assets, while ensuring that the value of the Defendant Asset is preserved and not diminished, transferred, or dissipated. If PNC Plaza is not sold, the proposed order authorizes the Government to receive and maintain the Defendant Asset's distributions, and to participate in its management during the pendency of this action.

**IV.    The Requested Order**

For the foregoing reasons, the Government requests that this Court enter a restraining order allowing for the continued operation of PNC Plaza, including the sale of the property, while preventing waste, dissipation, or disappearance of the Defendant Asset, with the following terms:

a. Optima CBD, CBD 500, Mordechai Korf, Uriel Laber, and their attorneys, agents, and anyone acting on their behalf, and all persons or entities acting in concert or participation with any of the above, and all persons and entities having actual knowledge of the order shall not directly or indirectly, transfer, sell, assign, pledge, distribute, encumber, attach or dispose of in any manner; cause to be transferred, sold, assigned, pledged, distributed, encumbered, attached or disposed of in any manner; or take, or cause to be taken, any action that would have the effect of depreciating, damaging, or in any way diminishing the value of the Defendant Asset, including any action that would increase costs or reduce revenues unless approved in writing by the Government.

b.	The owners of the Defendant Asset, including Optima CBD, CBD 500, Mordechai Korf, and Uriel Laber, are required to maintain the present contracts and agreements related to the Defendant Asset, and adhere to all provisions of any applicable contract or agreement until further order of this Court, and shall allow the United States to join in the Defendant Asset's management, including by directing key business decisions about day to day operations and to monitor compliance with the Order by all lawful means available.

c.	Optima CBD, CBD 500, Mordechai Korf, and Uriel Laber shall not make any effort to interfere with the operation or preservation of the Defendant Asset.

d.	Except as otherwise provided in the Order, all persons, financial institutions, and other entities who have or assert any access to, interest in, control over, or legal claim to the Defendant Asset, and all such persons' or entities' agents, employees, attorneys, family members, and those persons in active concert or participation with them, including but not limited to Optima CBD, CBD 500, Mordechai Korf, and Uriel Laber, shall be restrained, prohibited, and enjoined from attempting or taking any action that could affect the availability, marketability, or value of the Defendant Asset, including but not limited to, selling, conveying, transferring, bailing, assigning, pledging, collateralizing, encumbering, wasting, secreting, damaging, diminishing the value of, disposing of, or removing from the jurisdiction of this Court, all or any part of their interest, direct or indirect, in the Defendant Asset, unless approved in writing by the Government.

e.	500 West Jefferson Street LLC is authorized to consummate the sale as agreed to in the Purchase and Sale Agreement dated July 17, 2020 and amended on July 23, 2020.  Ninety-five percent of the net proceeds from such sale, as well as any other funds that would otherwise be transferred to Optima CBD, CBD 500, Korf, Laber, or their agents, representatives, or assigns, shall be transferred to the custody of the United States Marshals Service pending the outcome of this action.  Upon consummation of the sale and the transfer of 95% the net proceeds from such sale as discussed above, all restraints against PNC Plaza,

including any lis pendens, shall be released, and the net sale proceeds shall be treated as a substitute *res* for the property.

  f.  Additionally, any other funds related to PNC Holdings, 500 West Jefferson, or PNC Plaza, which would otherwise be owed or transferred to Optima CBD, CBD 500, Korf, Laber, or their agents, representatives, or assigns shall be transferred to the custody of the United States Marshals Service pending the outcome of this action.

  g.  All other sales or transfers of the assets or income or rights thereto of the Defendant Asset, except with the written permission of the Government, are prohibited.

  h.  In the event the sale described in the Sale Agreement is not consummated, the United States may file a further application for a restraining order or an order authoring the interlocutory sale of the Defendant Asset to prevent loss and waste and to preserve the property as an operating business.

  A proposed order is filed herewith.

            Respectfully submitted,

DATED: August 10, 2020    DEBORAH CONNOR, CHIEF
            MONEY LAUNDERING & ASSET RECOVERY
              SECTION

           By: /s/ *Shai D. Bronshtein*
              Shai D. Bronshtein, Trial Attorney (ID No. A5502665)
              Michael C. Olmsted, Senior Trial Attorney
              Peter Steciuk, Trial Attorney
              Mary Butler, Chief, International Unit
              Criminal Division
              United States Department of Justice
              1400 New York Avenue NW
              Washington, DC 20005
              Telephone: (202) 616-5950
              Shai.Bronshtein@usdoj.gov

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

*/s Adrienne E. Rosen*
Adrienne E. Rosen
Assistant United States Attorney
Court ID No. A5502297
U.S. Attorney's Office
99 Northeast Fourth Street, 7th Floor
Miami, Florida 33132-2111
Telephone: (305) 961-9338
Adrienne.Rosen@usdoj.gov