UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,

    Plaintiff,                          Case No.: 1:20-cv-23278-MGC

v.

REAL PROPERTY LOCATED AT 7505 AND
7171 FOREST LANE, DALLAS, TEXAS 75230,
WITH ALL APPURTENANCES, IMPROVEMENTS,
AND ATTACHMENTS THEREON, AND ANY
RIGHT TO COLLECT AND RECEIVE ANY PROFIT,
RENT, INCOME, AND PROCEEDS THEREFROM,

    Defendant,
_____/

UNITED STATES OF AMERICA,

    Plaintiff,                          Case No.: 1:20-cv-23279-RNS

v.

ALL RIGHT TO AND INTEREST IN PNC
CORPORATE PLAZA HOLDINGS LLC HELD,
CONTROLLED, OR ACQUIRED, DIRECTLY OR
INDIRECTLY, BY OPTIMA CBD INVESTMENTS
LLC AND/OR CBD 500 LLC, INCLUDING ANY
INTEREST HELD IN OR SECURED BY THE REAL
PROPERTY AND APPURTENANCES LOCATED
AT 500 WEST JEFFERSON STREET, LOUISVILLE,
KY 40202, et al.,

    Defendant,
_____/

**CLAIMANTS' TIME-SENSITIVE JOINT MOTION TO VACATE**
***EX PARTE* RESTRAINING ORDER**

The individual-Claimants and entity-Claimants, through undersigned counsel,[1] jointly move to vacate the applicable E*x Parte* Restraining Orders, ECF#6 (Cooke), ECF#5 (Scola), failing which, the Court should convene a prompt, adversarial evidentiary hearing with respect to the basis for the restraining order, and for any and all relief the Court deems just and appropriate.

## I.      Factual and Procedural Background

On August 6, 2020, the Government filed two Verified Complaints for Forfeiture In Rem, both of which generally allege that forfeiture is permissible because, under the United States' interpretation and application of Ukrainian law, various investments in the United States are "traceable to an international conspiracy to launder money embezzled and fraudulently obtained from PrivatBank [in the Ukraine]." *See* ECF#1:1, 15-16 (Cooke); ECF#1:1, 16-17 (Scola). Specifically, the United States alleges that so-called "misappropriated funds" were used to purchase interests in property located in Kentucky and Dallas. *See* ECF#1:1-2, 15-16 (Cooke); ECF#1:1-2, 16-17 (Scola). According to the Government, "Kolomoisky and Boholiubov recruited their American counterparts Korf and Laber [to] ... establish[] a complex system of entities in order to facilitate the laundering of the misappropriated funds, and to invest the funds in property and businesses in the United States." ECF#1:19 (Cooke); ECF#1:19 (Scola). The Verified Complaints plead seven counts for civil forfeiture of properties located in Texas and Kentucky. ECF#1:32-38 (Cooke); ECF#1:38-44 (Scola). The verification pages are signed by supervisory special agent with the FBI Matthew B. Hoke. ECF#1:41 (Cooke); ECF#1:46 (Scola).

---

[1] Because the entity-Claimants are corporations that "cannot appear pro se, and must be represented by counsel" *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985), counsel have appeared for the entity-Claimants to protect their interests at the outset, while reserving rights to seek modification of the restraining order to provide funds for the legal defense.

### A. Initial Outreach To The Government

On the morning of August 10, 2020, counsel for Claimants emailed the Government, stated that they would like to propose "interlocutory sale of the properties" and requested a conference call to discuss. Hours later, the government agreed to meet and confer while simultaneously filing, in Judge Scola's case, an *Ex Parte* Application for Post-Complaint Restraining Order, (the "*Ex Parte* Application" or "Application"), under seal, which claimed that it was "likely that individuals with that expertise would try to further secrete and launder the asset to avoid forfeiture." ECF#4:6-7 (Scola). The Government did not disclose to the Court that the undersigned counsel was reaching out to cooperatively negotiate an interlocutory sale of the properties, a material fact that would have detracted from the Government's narrative that exigent circumstances required *ex parte* relief. The Government knew that the Kentucky property was already under contract to be sold, with a closing date scheduled for months later, in October 2020. During the meet and confer held on August 11, 2020, the Government indicated its amenability to an interlocutory sale and stated that it would get back to counsel, without disclosing to undersigned that the *Ex Parte* Application (ECF#4) had already been filed.

Thereafter, on September 3, 2020, the Government filed, in Judge Cooke's case, 20-cv-23278-MGC, another *Ex Parte* Application for Post-Complaint Restraining Order, again under seal, and again claimed that "it is highly likely that individuals with that expertise would try to further secrete and launder the asset to avoid forfeiture" of the property at issue in that case. ECF#5:5 (Cooke). The Government did not disclose to counsel that it had filed the *Ex Parte* Applications under seal and did not inform the Court that it was actively in discussion with the undersigned counsel regarding the disposition of the properties, in an effort to reach a good faith accommodation voluntarily and in an open and transparent fashion.

### B. Ex Parte Application and Order—Kentucky Property (Scola)

As discussed in section I.A, *ante*, within hours of counsel openly reaching out to discuss a potential interlocutory sale of the Kentucky property, the Government filed under seal its *Ex Parte* Application, dated August 10, 2020. ECF#4 (Scola). The *Ex Parte* Application sought restraint of, among other things, "real property and appurtenances located at 500 West Jefferson Street, Louisville, KY 40202 ('PNC Plaza') [and] any profit, rent, income, and proceeds therefrom." ECF#4:1-2 (Scola). The *Ex Parte* application also sought to insert the Government as the *de facto* manager of the corporate entities that hold the real property, including "allow[ing] the United States to join in the Defendant Asset's management, including by directing key business decisions about day to day operations and to monitor compliance with the Order by all lawful means available." *Id.*

On August 14, 2020, the Court adopted the Government's proposed order verbatim, ECF#4-1(Scola), and entered its *Ex Parte* Restraining Order, ECF#5(Scola). The *Ex Parte* Order restrains the relevant Kentucky "real property and appurtenances [as well as] any profit, rent, income, and proceeds therefrom." ECF#5:1-2 (Scola). It further requires the Claimants to "allow the United States to join in the Defendant Asset's management, including by directing key business decisions about day to day operations," effectively substituting the Government as *ex parte* property manager. *Id.* at 2-3. . Further, the Order prohibits all persons with a legal claim to the "Defendant Asset" from, among other things, "wasting, secreting, damaging, diminishing the value of, disposing of, or removing from the jurisdiction of this Court" their interests "unless approved in writing by the Government." *Id*. The *Ex Parte* Order also "require[s] [Claimants] to maintain the present contracts and agreements related to the Defendant Asset" and thereby mandates the consummation of the "sale [of the PNC Plaza / Kentucky property] as

agreed to in the Purchase and Sale Agreement dated July 17, 2020 and amended on July 23, 2020." *Id.* at 2-3.

The closing mandated by the Order is scheduled for October 16, 2020, and PNC Plaza / Kentucky property is expected to sell for approximately $23 million dollars. The *Ex Parte* Order then compels the Claimants to transfer the sale proceeds "into the custody of the United States Marshals Service pending the outcome of this action." *Id.* at 3.

### C. Ex Parte Application and Order—Dallas Property (Cooke)

On September 3, 2020, the Government filed, under seal, its *Ex Parte* Application for Post-Complaint Restraining Order, which sought restraint of, among other things, "all right to and interest in the real property located at 7505 and 7171 Forest Lane, Dallas, Texas 75230, with all appurtenances, improvements, and attachments thereon (the 'CompuCom Campus')." ECF#5:1 (Cooke). The *Ex Parte* Application also sought to direct the business operations of the owners of the Dallas property, including requiring "approval in writing, by the Government" before taking any action that might affect the value of the property, and further requiring the owners to "maintain the present contracts and agreements related to the Defendant Asset, and adhere to all provisions of any applicable contract or agreement, and to maintain the present condition of the Defendant Asset, including timely payment of the mortgage, insurance, utilities, taxes, and assessments[.]" *Id.* at 6.

On September 4, 2020, the Court adopted the Government's proposed order verbatim, ECF#5-1 (Cooke), and entered its *Ex Parte* Restraining Order, ECF#6 (Cooke). The *Ex Parte* Order restrains the relevant Dallas property "with all appurtenances, improvements, and attachments thereon [as well as] *any right to collect and receive any profit, rent, income, and proceeds therefrom*," ECF#6:1, requires that the Claimants (a) obtain "approv[al] in writing by the Government"

before taking any action that might affect the value of the property (presumably including rental income), *id.* at 2:¶5.a, (b) "maintain the present contracts and agreements related to the Defendant Asset," *id.* at 2:¶5.b, and (c) "maintain the current levels of rent, income, and any other proceeds it receives in the course of such operation," *Id.* at 2:¶5.c.

### D.  Claimants Further Confer with Government and Contest Seizure

On October 5, 2020, Claimants filed claims contesting the forfeitures. ECF#10, #11, #12 (Cooke); ECF#17, #18, #19 (Scola). On several occasions, Claimants have conferred with the Government in an effort to reach an accommodation to obviate the need for the instant motion. The PNC Plaza / Kentucky property (Scola), is expected to sell for approximately $23 million, which after paying off debt and fees, should net for Claimant Optima CBD 500, LLC, (the 95% owner of the property), approximately $7 million.

Claimant Optima CBD 500 LLC ("CBD 500") is owned 100% by Claimant Optima CBD Investments LLC ("CBD **Investments**"). Claimant CBD **Investments** also owns a subsidiary named E. 12th Street LLC, which in turn owns a vacant lot in Cleveland. This vacant lot is mortgaged under a joint loan agreement, which is currently in default. CBD **Investments** was motivated to enter into the sale of CBD 500's Kentucky property in order to use some of the $7 million in closing proceeds from the sale of CBD 500's Kentucky property to repay the mortgage holder of CBD **Investment**'s vacant lot and thereby avoid foreclosure of the mortgage on CBD **Investment**'s vacant lot, with the prospect of altogether freeing the vacant lot from the loan obligation.

Accordingly, Claimants proposed to government counsel that approximately $500,000 to $2 million of the proceeds of the sale of Kentucky property be available to repay the mortgage holder of the vacant lot (amount to be negotiated with the mortgage holder), in exchange for the Government obtaining a corresponding lien

on CBD **Investment**'s vacant lot in the same amount pending the outcome of this forfeiture proceeding. It bears repeating that Claimants' sale of CBD 500's Kentucky property was motivated in large part to generate cash to pay the mortgage holder of the CBD **Investment**'s vacant lot and thereby avoid foreclosure of the mortgage. If the proceeds of the sale of CBD 500's Kentucky property were not going to be available to pay the mortgage holder of the vacant lot, Claimants would have endeavored to (and now would endeavor to) structure the deal with the buyer of the Kentucky property, if possible, to generate funds that CBD **Investments** could use (with permission of the Court, as required) to pay the mortgage holder of the vacant lot.

In addition to sustaining the vacant lot, the entity-Claimants proposed to the Government that the sale proceeds from the Kentucky property also be available to pay for bona fide legal fees in defense of the instant forfeiture action. The entity-Claimants are corporations that "cannot appear pro se and must be represented by counsel." *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985). As the Ex Parte Restraining Order would, by its terms, command the sale of the Kentucky property but then prohibit use of the sale proceeds, the entity-Claimants would not have cash flow to fund the defense of this forfeiture action.

To date, the Government has refused any compromise with regard to the Kentucky property (Scola). The parties have not engaged in any discussion regarding modification of the Ex Parte Restraining Order with regard to the Dallas property (Cooke).

## II.     Summary of the Argument

The *Ex Parte* Applications were plainly unconstitutional pursuant to *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 52–57, 62 (1993), which holds that due process requires a hearing before the government may seize real property pending the resolution of a civil forfeiture action. The real property and ownership

of the companies which hold the real property and exist solely to manage the real property could not be constitutionally seized without a pre-restraint hearing, especially where there were no exigent circumstances and counsel was actively apprising the Government of a contemplated sale and endeavoring to work with the Government cooperatively to effectuate the same.

Because of the manner in which the Government chose to proceed after Claimants' counsel began negotiations with the Government, Claimants had no opportunity to challenge the *ex parte* restraint of their interests in the property. Claimants have since conferred with the Government, and the Government asserts that the Claimants are not entitled to any post-restraint hearing, despite the Supreme Court's decision in *Good Real Prop.*, 510 U.S. at 52-57, which mandates a hearing <u>before</u> the government may seize real property pending the resolution of a civil forfeiture action.

The Government's *Ex Parte* Applications also cite 18 U.S.C. § 983 as their legal basis but ignore § 985, which governs civil forfeiture of real property and interests in real property. The Government indisputably sought and obtained the restraint of "real property" and have obtained an order that expropriates the interests derived therefrom, including "profit, rent, income, and proceeds" as well as compelling participation in various aspects of realty management. The Government should have notified the Court—especially given the ex parte nature of the application—that § 985 and its procedural protections govern real property forfeiture, <u>not</u> § 983.

Pursuant to section 985(d), the Government was required to either: (1) afford the property owners a pre-restraint hearing at which they would be heard on the issue of probable cause; or (2) demonstrate an emergency justifying an *ex parte* determination of probable cause for seizure of the property. *See* 18 U.S.C. §§ 985(d)(1)(A)-(B)(i-ii). For, the Government lawfully to proceed *ex parte*, it had to

demonstrate exigent circumstances. *See id.* at § 985(d)(1)(A)-(B)(ii). With a lis pendens already in place, the Government had no need for a more intrusive order, particularly given that Claimants, through counsel, had notified the Government of their intentions. See *id.* at § 985(d)(2)("the Government shall show that less restrictive measures such as a lis pendens … would not suffice to protect the Government's interests in preventing the sale, destruction, or continued unlawful use of the real property.").

Even assuming *arguendo* that the Government adequately identified an actual emergency supported by articulable evidence, (it did not—and could not because counsel was transparent and actively reaching out and consulting with the Government), Claimants remain entitled to "a prompt post-seizure hearing during which the property owner shall have an opportunity to contest the basis for the seizure." *Id.* at § 985(e) (emphasis added). Claimants maintain that any *ex parte*, pre-hearing restraint of real property would have been unconstitutional based on the holding of *Good Real Property*, but even the minimum protection of § 985(e) was ignored, and the applicability of § 985 was never even disclosed to the Court. To date, Claimants have not been afforded a hearing and the Government still disputes entitlement to a prompt hearing, despite section 985(e)'s clear language.[2]

Moreover, even if the *Ex Parte* Application and Order did not implicate interests in real property, (and they do), the claimants would still be entitled to a prompt post-restraint hearing, pursuant to due process case law. The Government

---

[2] As to the Kentucky property (Scola), this motion is especially time-sensitive insofar as the Government intends for the mandated sale to convert the real property into cash and then argue that a hearing is no longer required. See 18 U.S.C. § 985(f)(2)("This section— does not apply to forfeitures of the proceeds of the sale of such property or interests…."). But the Government cannot short circuit the procedural requirements of § 985(e) by orchestrating an ex parte forced sale. If an interest in real property is seized at the outset, then Claimants are entitled to the procedural protections of section 985(e) at the outset, and the post-seizure hearing must therefore be provided "prompt[ly]"— at the outset. In any event, a hearing is still required as to the Dallas property (Cooke), for which no sale is imminent.

cannot expropriate and commandeer tens-of-millions-of-dollars-worth of real property without a hearing, based solely on a threadbare verification page and *ex parte* motion under seal. Due process, equity, and fundamental fairness affords the Claimants far more — including but not limited to a meaningful hearing and opportunity to confront meritless allegations.

### III. Legal Principles—Statutory and Constitutional

"The procedures governing civil forfeiture proceedings are mapped out across several overlapping statutory provisions in the United States Code." *In re 650 Fifth Ave. & Related Properties*, No. 08 CIV. 10934 (LAP), 2020 WL 995886, at *3 (S.D.N.Y. Mar. 2, 2020) (Preska, J.). "Seeing as civil forfeiture involves the seizure and confiscation of private property, that statutory framework necessarily reflects the bedrock requirements of the Due Process Clause of the Fifth Amendment, which provides that '[n]o person shall . . . be deprived of life, liberty, or property, without due process of law.' " *Id.* (citing U.S. Const. amend. V).

"Section 985 of Title 18 of the United States Code codifies rules specifically applicable to civil forfeiture of 'real property and interests in real property.'" *Id.* at *4 (quoting 18 U.S.C. § 985(f)(1)). "That statute lays out a general rule that 'real property that is the subject of a civil forfeiture action shall not be seized before entry of an order of forfeiture.'" *Id.* (quoting 18 U.S.C. § 985(b)(1)(A)). The statute, however, carves out two situations where real property may be seized prior to the entry of an order of forfeiture. *Id.* First, where the Government has notified the court that it intends to effect a pretrial seizure of real property, a court may "issue[ ] a notice of application for warrant, cause[ ] the notice to be served on the property owner and posted on the property, and conduct[ ] a hearing in which the property owner has a meaningful opportunity to be heard." *Id.* (quoting §§ 985(d)(1)(A)-(B)(i)). Second, where the Government has provided the same notice to the court, the court may make an *ex parte* determination that there is probable cause for

forfeiture and that "exigent circumstances . . . permit the Government to seize the property without prior notice and an opportunity for the property owner to be heard." *Id.* (quoting 18 U.S.C. § 985(d)(B)(ii)).[3]

To oversimplify the issue: if real property is involved, under § 985, the Government may seize the property before a trial only if (1) there is a hearing where property owners may be heard on the issue of probable cause or (2) there is an emergency justifying an ex parte determination of probable cause for seizure of the property. *Id.* However, where the property has been seized *ex parte*, the Court "shall conduct a prompt post-seizure hearing during which the property owner shall have an opportunity to contest the basis for the seizure." *Id.* at § 985(e) (emphasis added).

Even outside the context of seizure of real property, "considerations of due process can require the court to hold a post-restraint pretrial hearing in certain circumstances." *United States v. Melrose E. Subdivision*, 357 F.3d 493, 499 (5th Cir. 2004). "Although there does not seem to be a reported holding to this effect regarding . . . 18 U.S.C. § 983(j), authorities interpreting its criminal analogue, 21 U.S.C. § 853(e), are in broad agreement that due process requires the district court to hold a prompt hearing at which the property owner can contest the restraining

---

[3] The Government failed to demonstrate the existence of exigent circumstances (*via* an unverified motion, no less) for an intrusive *ex parte* order which effectuated a seizure, even if nominally denominated as only a "restraining" order. *See* Section III(A), *infra*.

> For purposes of paragraph (1)(B)(ii), to establish exigent circumstances, the Government shall show that less restrictive measures such as a lis pendens, restraining order, or bond would not suffice to protect the Government's interests in preventing the sale, destruction, or continued unlawful use of the real property.

18 U.S.C. § 985(d)(2). The Government obtained lis pendens, the Government knew that the closing date for the sale of the Kentucky property was not scheduled until months later (Scola), the Government knew that there was no risk of an imminent sale of the Dallas property (Cooke), and, moreover, counsel was openly discussing the potential sales with government counsel. Under these circumstances, the Government did not and could not demonstrate the requisite exigency.

order—without waiting until trial to do so." *Id.* (collecting cases). "This is the same approach that the Supreme Court has taken in civil cases where property is seized based on an *ex parte* proceeding." *United States v. Kaley*, 579 F.3d 1246, 1257 (11th Cir. 2009) (citing *Mitchell v. W.T. Grant Co.,* 416 U.S. 600 (1974)). "The Supreme Court has held that, in these situations, the debtor is, at least, owed a post-restraint hearing to determine whether probable cause actually exists." *Id.* (citing *Mitchell*, 416 U.S. at 607; *Fuentes v. Shevin,* 407 U.S. 67, 92 (1972).

The need for a post-restraint hearing is even more compelling in a pre-indictment civil case such as this one because: "[i]n the criminal context, an *ex parte* pretrial restraining order under 21 U.S.C. § 853(e)(1)(A) is at least supported by a grand jury finding of probable cause, but that need not be the case in civil forfeitures"; the "ultimate resolution of a civil forfeiture case may be longer in coming, as such a case is not governed by the speedy trial considerations operative in a criminal case"; and "While a claimant in a civil forfeiture case might hope to regain restrained property quickly by filing a motion for summary judgment, the government can block this tactic by moving to stay the civil forfeiture proceeding pending the criminal trial [or investigation]." *Melrose*, 357 F.3d at 503 n.9.

In any event, in all instances, due process requires a hearing *before* the government may seize real property pending the resolution of a civil forfeiture action. *See Good Real Prop.*, 510 U.S. 43 at 52–57, 62.

### A. The *Ex Parte* Order Effectively Substituted the Government in Place of the Property Owners and Stripped the Claimants of All Property Rights and, Therefore, Constituted A Quintessential "Seizure."

18 U.S.C. § 985(f)(3) provides that "[t]his section— shall not affect the authority of the court to enter a restraining order relating to real property." But because the so-called, Ex Parte Restraining Orders impose more than just a restraint

on alienation—even if not physical occupation—they effect a seizure within the meaning of section 985 and the Due Process Clause.

As other Courts have put it, the entire thrust of the Supreme Court's reasoning in *Good Real Property* is that physical possession is not the *sine qua non* of real property seizure. *See United States v. Property Identified as Lot Numbered 718*, 20 F. Supp.2d 27, 36 (D.D.C. 1998) ("What is a seizure? In *Good Real Property*, it was something less than physical eviction — the collection of rent."); *see also United States v. 408 Peyton Rd., S.W., Atlanta, Fulton County, GA*, 162 F.3d 644, 650 (11th Cir. 1998) ("[T]he Supreme Court in *Good* did not intend for physical control to be of paramount importance when determining whether a constitutionally cognizable 'seizure' of real property has taken place."). "A seizure of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *In re 650 Fifth Ave*, 2020 WL 995886, at *5 (noting that "limited conception[s] of seizure face[] powerful headwinds in the caselaw.").

Judge Scola's *Ex Parte* Restraining Order mandates a property sale and inserts the Government as property manager "including by directing key business decisions about day to day operations." ECF#5:3 (Scola). Judge Cooke's *Ex Parte* Restraining Order interferes with the Claimants' "right to collect and receive any profit, rent, income, and proceeds" from their real property, ECF#6:1-2 (Cooke), by requiring that the Claimants (a) obtain "approv[al] in writing by the Government" before taking any action that might affect the value of the property (presumably including rental income), *id.* at 2:¶5.a, (b) "maintain the present contracts and agreements related to the Defendant Asset," *id.* at 2:¶5.b, and (c) "maintain the current levels of rent, income, and any other proceeds it receives in the course of such operation," *Id.* at 2:¶5.c. The mere "step of asserting control over the property," *Good Real Prop.*, 510 U.S. at 59, "cause[s] the requisite impact to Claimants' exercise of their property rights such that they amount to a seizure of real property." *In re 650 Fifth Ave.*, 2020

WL 995886, at *6. Accordingly, the procedural requirements of section 985 apply, notwithstanding 18 U.S.C. § 985(f)(3).

### B. Due Process Of Law Mandates A Hearing

Even if section 985 were not in play, the Fifth Circuit case cited by the Government in a footnote to each of its *Ex Parte* Applications, ECF#5:4 n.3 (Cooke), ECF#4:6 n.2 (Scola), purportedly in support of the proposition that no hearing is required, actually supports Claimants' position that a hearing is required. That case, *United States v. Melrose E. Subdivision*, "assume[d] without deciding that due process can mandate a post-restraint hearing under § 983(j)(1)(A)." 357 F.3d at 500. In performing its analysis, the Fifth Circuit recognized that the need for a post-restraint hearing is even more compelling in a pre-indictment civil case such as this one because: "[i]n the criminal context, an ex parte pretrial restraining order under 21 U.S.C. § 853(e)(1)(A) is at least supported by a grand jury finding of probable cause, but that need not be the case in civil forfeitures"; the "ultimate resolution of a civil forfeiture case may be longer in coming, as such a case is not governed by the speedy trial considerations operative in a criminal case"; and "[w]hile a claimant in a civil forfeiture case might hope to regain restrained property quickly by filing a motion for summary judgment, the government can block this tactic by moving to stay the civil forfeiture proceeding pending the criminal trial." *Id.* at 503 n.9.

"[A]uthorities . . . are in broad agreement that due process requires the district court to hold a prompt hearing at which the property owner can contest the restraining order—without waiting until trial to do so." *Id.* (collecting cases). "Seeing as civil forfeiture involves the seizure and confiscation of private property, that statutory framework necessarily reflects the bedrock requirements of the Due Process Clause of the Fifth Amendment, which provides that '[n]o person shall . . . be deprived of life, liberty, or property, without due process of law.' " *In re 650 Fifth Ave.*, 2020 WL 995886, at *3 (Preska, J.). (citing U.S. Const. amend. V). "This is

the same approach that the Supreme Court has taken in civil cases where property is seized based on an *ex parte* proceeding." *United States v. Kaley*, 579 F.3d 1246, 1257 (11th Cir. 2009) (citing *Mitchell v. W.T. Grant Co.,* 416 U.S. 600 (1974)). "The Supreme Court has held that, in these situations, the debtor is, at least, owed a post-restraint hearing to determine whether probable cause actually exists." *Id.* (citing *Mitchell*, 416 U.S. at 607; *Fuentes v. Shevin,* 407 U.S. 67, 92 (1972) ). At a minimum, a post restraint hearing is required at which the Claimants can challenge the Government's factual predicate.

In any event, in all instances, due process requires a hearing before the government may seize real property pending the resolution of a civil forfeiture action. *See Good Real Prop.*, 510 U.S. at 52–57, 62.

### C. The Requisite "Opportunity To Contest The Basis For The Seizure" Includes The Right To Cross Examine.

"The government's decision to seek a pretrial seizure is not without some consequence." *United States v. Contents of Accounts*, No. 3:10-CV-228-H, 2010 WL 2556849, at *11 n.20 (W.D. Ky. June 18, 2010*), aff'd in part, appeal dismissed in part*, 629 F.3d 601 (6th Cir. 2011). "[I]t would seem questionable that the government could take property and then hide the witness whose affidavits supported the taking." *Id.* In the instant case, the sole factual predicate for the *ex parte* seizure of the $23 million dollar asset and substitution of the Government as *ex parte* property manager is a single verification page executed by Matthew M. Hoke, "supervisory special agent with the FBI . . . assigned to the investigation in this case." ECF#1:46. Agent Hoke swears that the facts are "true to [his] own knowledge, except that those matters herein stated to be alleged on information and belief, and as to those matters, [he] believe[s] them to be true." *Id.* The "sources of [his] knowledge and information and the grounds of [his] belief" include

"information supplied by other law enforcement officers, experts, and other witnesses, as well as [his] investigation of this case." *Id.*

Agent Hoke's verified complaint contains factual allegations spanning several decades with facts and circumstances transpiring simultaneously on different continents, in different languages, not to mention the many legal conclusions that are interwoven with numerous provisions of the Ukrainian Criminal Code. Demonstration of a likelihood to prevail requires admissible evidence, not inadmissible hearsay or information and belief. Due process permits Claimants to engage in an examination of Agent Hoke. *See United States v. Contents of Wells Fargo Bank Account XXX5826 in name of Auto. Consultants of Hollywood, Inc.*, No. 1:13-CV-716, 2014 WL 12781321, at *5 (S.D. Ohio Feb. 4, 2014); *Contents of Accounts*, 2010 WL 2556849, at *11 n.20. "Both parties may present any additional evidence or testimony at the hearing that is relevant to the issue of probable cause to believe that the seized assets will ultimately be found to be forfeitable." *Contents of Wells Fargo Bank Account XXX5826*, 2014 WL 12781321, at *5. Given that the only evidence submitted in support of probable cause to date is the single verification page of Agent Hoke, the "opportunity to contest the basis for the seizure" necessarily includes the opportunity to examine Agent Hoke and his basis for the factual assertions.

### D. Insofar as the Ex Parte Order was Improvidently Entered, The Government is Liable to Claimants for Proceeds Realized During the Improvident Restraint.

A long line of cases have concluded that, even where property is later "found to be subject to forfeiture after the process due has been afforded," the Government must "return [] any rents received or other proceeds realized from the property during the period" in which property was illegally seized without an appropriate hearing. *408 Peyton Rd.*, 162 F.3d at 645. "[I]f property is seized ex parte and the Government

can show at the § 985(e) post-seizure adversarial hearing that there is probable cause to believe the property is connected to crime, *but cannot establish exigent circumstances*, then the ex parte seizure is illegal and the proper remedy is to give the owner lost profits or rents for the period of illegal seizure a period terminated by a finding confirming the existence of probable cause following an adversarial hearing." *United States v. Bowman*, 341 F.3d 1228, 1235 (11th Cir. 2003) (emphasis added); *see also United States v. Real Property Located at 1184 Drycreek Road, Granville, OH*, 174 F.3d 720, 728 (6th Cir. 1999); *United States v. Marsh*, 105 F.3d 927, 932 (4th Cir. 1997); *United States v. All Assets & Equip of W. Side Bldg. Corp.*, 58 F.3d 1181, 1193 (7th Cir. 1995); *United States v. 20832 Big Rock Drive*, 51 F.3d 1402, 1406 (9th Cir. 1995); *United States v. 51 Pieces of Real Prop. Roswell, N.M.*, 17 F.3d 1306, 1315–16 (10th Cir. 1994); *United States v. 1461 W. 42nd St.*, Case No. 91-1077-CIV-DAVIS, ECF No. 644, (S.D. Fla. Mar. 10, 1999), *aff'd*, 251 F.3d 1329, 1337 (11th Cir. 2001); *United States v. Real Prop. Located at Incline Village*, 958 F. Supp. 482, 490 (D. Nev. 1997).

Here, both Restraining Orders were obtained by the Government *ex parte*, without affording the property owners the statutory and constitutional process they were due under section 985 and the Constitution, *see Good Real Prop.*, 510 U.S. at 52–57, 62, and, moreover, without any exigent circumstances. To the extent that the Government has orchestrated an end-run-around the procedural protections codified in section 985(e), the Court should order the Government to "return [] any rents received or other proceeds realized from the property during the period" in which property was illegally seized without an appropriate hearing, including the proceeds of any forced sale of the Kentucky property (Scola) that deprives Claimants of income needed to funds other operations, e.g., paying the mortgage holder of CBD **Investment**'s vacant lot.

## CONCLUSION

Claimants submit that the Ex Parte Restraining Orders should be vacated. Claimants reserve all other objections to this Court's jurisdiction, including subject matter jurisdiction. Claimants' effort to preserve their rights and dissolve the *Ex Parte* Orders should not be construed as a waiver of any rights, all of which are expressly reserved.

WHEREFORE, Claimants respectfully move this Court to vacate the *Ex Parte* Restraining Orders, failing which, to promptly scheduling a post-seizure, adversarial evidentiary hearing.

## **REQUEST FOR A PROMPT HEARING**

Pursuant to Local Rule 7.1(b)(2), the Claimants hereby request a hearing on this motion because of the substantial and complex legal issues raised, the importance of the rights at stake, and the utility of discussing the factual nuances of the case.

## **CERTIFICATION REGARDING PRE-FILING CONFERENCE**

Pursuant to Local Rule 7.1(a)(3), undersigned counsel conferred with counsel for the United States in a good faith effort regarding the matters set forth in this Motion. The United States opposes the relief requested in the Motion.

Respectfully submitted,

Black, Srebnick, Kornspan & Stumpf, P.A.
201 South Biscayne Blvd., Suite 1300
Miami, FL 33131 / Tel: (305) 371-6421

By: /s/ Howard Srebnick
  Howard Srebnick
   Florida Bar No. 919063
   HSrebnick@RoyBlack.com
  Robert T. Dunlap
   Florida Bar No. 11950
   RDunlap@RoyBlack.com

Kasowitz Benson Torres LLP
1633 Broadway
New York, New York 10019
(212) 506-1700
Marc E. Kasowitz
Mark P. Ressler
Ronald R. Rossi
Sarmad M. Khojasteh
Joshua Paul
*Pro Hac Vice Anticipated*
MKasowitz@kasowitz.com
MRessler@kasowitz.com
RRossi@kasowitz.com
SKhojasteh@kasowitz.com
JPaul@kasowitz.com

*Attorneys for Claimants Korf and the Corporate Entities*

Scott A. Srebnick, P.A.
201 South Biscayne Boulevard
Suite 1210
Miami, FL 33131
Telephone: (305) 285-9019
Facsimile: (305) 377-9937
Scott@srebnicklaw.com

*Attorney for Claimant Laber*